UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

        Plaintiff,

V.                                            NO.  3:15-cr-00147-JCH

MATTHEW GOLDREICH,

        Defendant.                  OCTOBER 26, 2015

**<u>DEFENDANT MATTHEW GOLDREICH'S SENTENCING MEMORANDUM</u>**

**<u>Introduction</u>**

In the dense forest of Federal criminal statutes there exists a very sparse glen of misdemeanors.[1]  Matthew Goldreich has pleaded guilty to one of those misdemeanors:  18 U.S.C. 709, entitled "False Advertising or Misuse of Names to Indicate Federal Agency."  This statute makes it illegal to:

> use[s] the word[s] "national" . . . as part of a business
> or firm name . . . engaged in the . . . loan . . . business

The purpose of the statute, as it is entitled, is to prevent the public from being misled to believe that the named entity is affiliated with United States Government.

There is unfortunately an antagonism in this case that, like divorce litigation, has generated more heat than light.  The Government appears to

---

[1] Chapter 33 of Title 18 contain statutes, for example, that prohibit the misuse of military medals or decorations (18 U.S.C. 704; misuse of Geneva distinctive emblems (18 U.S.C. 706(a)); misuse of "Smokey Bear" character or name (18 U.S.C. §711); and misuse of "Woodsy Owl" character name or slogan (18 U.S.C. §711a).

1

have adopted the premise that all companies who charge a fee to applicants for benefits under the Federal HAMP Program are per se dishonest; that they make false promises; that they take fees and provide no services; and, in this instance, that those who advertise for those companies are equally dishonest.[2] Mr. Goldreich regrets that his actions led any callers to experience losses; admits responsibility for the consequences of his actions; but, frankly, resents the Government's premise. He perceives himself as an upstanding citizen of the advertising community who, three to six years ago, produced and aired advertisements on national television for legitimate clients who provided services for a fee to process HAMP applications; who unintentionally violated a statute of which he was unaware by using the word "national"; and who is frustrated by his present circumstances. Although one of his clients defrauded its customers, Mr. Goldreich was not aware of that until sued in a civil action in 2013. Mr. Goldreich accepts responsibility but, with some justification, feels he has been singled out, belatedly, for prosecution.

The contrasting positions are clear. The Pre-Sentence Report accurately depicts that. This memorandum is brief. Its brevity is not intended to

---

[2] The Government's position has been incorporated almost verbatim in the Pre-Sentence Report, including the pejorative descriptives. In addition, the Government also sought to have included as relevant conduct an erroneous claim that Mr. Goldreich's actions violated the telemarketing statute (18 U.S.C. 2325 et., seq). It also claimed that Mr. Goldreich had violated the terms of a consent order in connection with private litigation related to the activities of First One Lending Corporation. (See PSR Paragraphs 20 and 21). The defendant provided proof, based on the FTC policy, that the telemarketing statute did not apply. He also provided expert opinion from an attorney knowledgeable in mortgages, as well as a legal opinion from Mr. Goldreich's attorney in that litigation. Accordingly, the Pre-Sentence Report does not include the Government's claim with respect to the violation of the telemarketing statute and, in the addendum, notes that the PSR does not agree that Mr. Goldreich's actions violated the consent decree (First Addendum).

minimize the significance of the case, or to dismiss it as "just a misdemeanor." Its purpose, rather, is to identify what we feel are the relevant considerations for the Court at sentencing and, at the same time, to avoid a non-productive back-and-forth about whose view of the world is correct.

Mr. Goldreich requests a non-incarceration sentence and suggests that, in addition to the restitution amount of approximately $77,000.00, a fine is appropriate.

**Matt's Business**

Matt Goldreich's business is National Media Connections, LLC. It is a telemarketing company. It produces and airs nationwide commercials both for itself and for other clients. For many clients it serves as a call center which receives and routes calls to the clients. In this case, Matt's clients were entities that provided assistance, for a fee, to individuals who wished to apply for the HAMP Program. The ads were aired nationally. There were disclaimers displayed in the television ads indicating that National Mortgage Help Center was not affiliated with the United States Government.[3] Calls coming in were routed geographically to the respective clients. Matt's company was paid on a per-call basis by the clients. His company did not process any applications; was not paid by the callers; and did not interact with the callers in securing or attempting to secure HAMP benefits. In short, the clients paid Mr. Goldreich

---

[3] The Government maintains that the written disclaimers were insufficient. The defendant disagrees. Nevertheless, as set forth below, since the initiation of this case he has consulted with counsel who have FTC expertise, and has received compliance advice from them which his company follows.

3

for getting the calls; clients were then paid by the callers for processing the applications.

Apart from the civil action related to this case, National Media Connections has never been censured by any official entity for its actions. In fact, in 2011, during the time frame these ads aired, the FTC made inquiry into National Media Connection's business, received full cooperation from Mr. Goldreich and his company, and took no action.

**The Problem**

Matt's LLC, National Mortgage Help Center, LLC produced and aired ads between 2009 and October of 2012 offering mortgage assistance that provided a call-in number for interested viewers. The calls, as noted were routed geographically to the clients. These clients interacted with the callers, charged fees and provided the services. The Government claims that the ads were misleading; that callers were lead to believe that they were dealing with a single entity; that that entity was affiliated with the federal government; and that it actually processed the applications.

The real problem revolved around one particular rogue client, First One Lending Corporation of California. First One took money from some who had called in, but did not provide the services for which it was paid. It is our understanding that First One is now out of business. The total amount of identified losses is approximately $102,000.00.

A portion of that has already been paid in restitution to those who had been misled by First One. Matt did not know that First One was not fulfilling

its obligations until long after he terminated his relationship with the company, but had been named as a defendant in a civil action brought by NACA. Matt settled that case out of Court with a payment of $50,000.00.[4]

**The Investigation**

From Matt's perspective, the investigation began with execution of a search warrant at his business premises in August of 2015. A grand jury was subsequently convened to investigate possible mail and wire fraud charges. Matt learned that he had violated 18 U.S.C. §1109, and agreed to plead to that offense.[5]

Upon information and belief, no charges have been filed against any one individual, nor against any entity, to date, including First One.

**The Sentencing Guidelines**

    **The Law of Sentencing**

This Court well knows the applicable sentencing statute, 18 USC 3553(a). It is set forth in the footnote below.[6] The Court has

---

[4] Calculation of the amount of restitution, now at about $75,000.00 is confusing if the losses were $102,000.00 and Matt paid $50,000.00.
[5] Because there was a disagreement on the extent of Matt's responsibility for losses incurred by the callers, there was an unwillingness to enter into a specific plea agreement. Matt's position on losses has since changed. He accepts responsibility for the restitution in the approximate amount of $77,000.00. Those funds are available and are prepared to be paid at the time of sentencing.
[6] In its entirety, 18 U.S.C. §3553(a) provides:

**(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

received, and will continue to receive, memoranda similar to this, synopsizing the evolution of sentencing law from the adoption of

---

**(2)** the need for the sentence imposed--

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for--

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

**(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement--

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced. [FN1]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

the sentencing guidelines in 1987, to today when guidelines are, happily, advisory, not presumed reasonable, and serve only as a starting point for analysis. The basic law of post-Booker sentencing boils down to the following principles:

    1. The guidelines are no longer mandatory but advisory;

    2. The District Court's sentences are reviewed on an abuse of discretion basis for reasonableness;

    3. A guideline sentence is not presumed to be reasonable; and

    4. In imposing a non-guideline sentence, the Court is required to comply with the considerations set forth in 18 U.S.C. § 3553(a,) and can afford whatever weight it believes is appropriate to each of the factors outlined in the statute (not the least of which is that the sentence imposed should be sufficient, but not greater than necessary, to satisfy the requirements of the statute).

The detailed footnote below sets forth a synopsis of the case law well known to this Court, and hopefully avoids repetition and the consumption of multiple, non-productive pages.[7]

---

[7] The basic law of post-Booker sentencing boils down to the following principles:

    (1) the Guidelines are no longer mandatory but advisory;

    (2) District Court sentences are reviewed on an abuse of discretion basis for reasonableness;

    (3) a guidelines sentence is not presumed to be reasonable; and

**The Guidelines In This Case**

As anticipated by the author of the Pre-Sentence Report [Paragraph 105], Mr. Goldreich contends that the guidelines overstate the seriousness of the offense. The maximum statutory penalty is one year incarceration and a $100,000.00 fine. The guidelines come out higher than that statute in terms of time of incarceration [Paragraph 91] but lower than the statute in terms of fines [Paragraph 98].

---

(4) in imposing a non-guideline sentence the Court is required to comply with the considerations set forth in 18 U.S.C. 3553(a) and is free to afford whatever weight it believes is appropriate to each of the factors outlined in the statute.

In its en banc decision in United States v. Cavera, 550 F.3d 180 (2d Cir. 2008), the Second Circuit discussed the parameters of federal sentencing law in the wake of United States v. Booker, 543 U.S. 220, 226-27 (2005), which held that mandatory application of the Sentencing Guidelines was unconstitutional under the Sixth Amendment. The Court in Booker ruled that the Sentencing Guidelines were effectively advisory, and that sentencing courts were permitted to fashion appropriate sentences for each offense taking into consideration not only the Guidelines range, but also the factors enumerated by Congress in 18 U.S.C. §3553(a). Further, such sentences would be reviewed for "unreasonableness." Booker, 543 U.S. at 261. "Review for 'unreasonableness' amounts to review for abuse of discretion." Cavera, 550 F.3d at 187 (citing Gall v. United States, 552 U.S. 38 (2007)).

As the Cavera court recognized:

A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime. In addition to taking into account the Guidelines range, the district court must form its own view of the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The sentencing judge is directed, moreover, to consider: a) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for that offense; b) the need to afford adequate deterrence to criminal conduct; c) the need to protect the public from further crimes by the defendant; and d) the need for rehabilitation. Id. § 3553(a)(2). Additionally, district courts must take into account: the kinds of sentences available, id. § 3553(a)(3); any pertinent Sentencing Commission policy statement, id. § 3553(a)(5); the need to avoid unwarranted sentence disparities among similarly situated defendants, id. § 3553(a)(6); and, where applicable, the need to provide restitution to any victims of the offense, id. § 3553(a)(7).

The defendant takes issue with Paragraph 43 with respect to Section 3A1.1(b)(1), and maintains it is not applicable. The recipients of the ads were not "vulnerable victims". The ads were not focused on any one particular segment of the population beyond those who could benefit from the HAMP Program. It is erroneous, defendant contends, to assume that everyone in mortgage difficulty was necessarily poor or uneducated, rather than merely unfortunate victims of the impact of the machinations of those much higher up on the food chain that impacted the economy. Bureaucracy is never simple. Applications for the HAMP Program can be burdensome, and those in need of mortgage assistance could benefit from the services provided for a fee by the clients of National Media. Further, Application Note 2 of Section 3A1.1 states that a two level enhancement:

> . . . would not apply in a case in which the defendant sold fraudulent securities by mail <u>to the general public</u> and one of the victims happened to be senile.

(Emphasis supplied). Those experiencing mortgage difficulties in 2008, and after, covered a wide swath of the general public encompassing all demographics. It is not accurate to describe those to whom the ads were directed as "vulnerable victims."

**Sentencing Considerations under 18 U.S.C. 3553a**

This crime consists of improper use of the word "national" in connection with ads for assistance with applying for a Government program. The ads were run some three to six years ago for a relatively limited period of time. Callers responding paid for a service to help process an application for mortgage

assistance. Whether they actually believed that National Mortgage Help Center was a Government entity, or whether they acted to secure assistance in HAMP applications because of that belief is, frankly, difficult to determine. The identified losses resulted from a single rogue, client and the defendant did not know that the client was failing to provide the services for which the callers paid. It is more likely that the losses resulted from First One's dishonesty, rather than from the use of the word "national." The amount of losses are precisely defined. The defendant is prepared to make restitution. The ads did contain disclaimers which the defendant believed met the standards and practices of the stations which aired the ads.

Matt Goldreich has pled guilty to a misdemeanor. He has no record. This is a non-violent crime. He is 46 years old. He is a father of two natural children, and has assumed responsibilities for a young adult son of his wife by her first marriage. He has treated his neighbors well. There are letters of support to substantiate that. He is contrite and has willingly agreed to restitution. Concededly, his contrition is tempered by a frustration that being singled out for prosecution.[8] He has the ability to pay a fine. Neither he, nor his company, had been previously censured or disciplined. We believe that he was entitled to assume that – once inquired of by the FTC with which he cooperated fully – and having received no sanction whatsoever, that he had violated any FTC regulations or any laws, including the statute at issue.

---

[8] Counsel has found no identical prosecutions under the statute.

He has, since the execution of the search warrant, consulted with lawyers who have an expertise in FTC law, and has followed their advice in the ads which he produces. Thus, the goal of specific deterrence has been accomplished. The subject matter here is regulated principally by the FTC. Sanctions imposed by that body are, in almost all instances, civil, monetary and non-incarcerative. The FTC has gauged that approach as sufficient to address concerns of general deterrence. We submit the guidelines overstate the seriousness of the offense. Mr. Goldreich is not in need of educational or vocational training, medical care or other correctional treatment.

**Conclusion**

We respectfully submit that a non-incarceration sentence is appropriate. The defendant should be required to pay restitution in a specific amount which he is prepared to do instantly. We believe, additionally, a fine within the guideline range is appropriate.

We submit the suggested sentence is sufficient, but not greater than necessary, to fulfill the requirements of the sentencing statute.

RESPECTFULLY SUBMITTED,

THE DEFENDANT,
MATTHEW GOLDREICH

By_____
William F. Dow, III (ct00161)
JACOBS & DOW, LLC
350 Orange Street
New Haven, CT 06510
Telephone: 203-772-3100
Facsimile: 203-772-1691
E-Mail: wdow@jacobslaw.com

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 26, 2015 the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

_____
William F. Dow, III